UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| EARNESTINE A. MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:13-CV-153-BG |
| | ) | ECF |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Earnestine A. Moore filed this action seeking judicial review of the Commissioner's decision to deny her application for disability insurance benefits and supplemental security income. The district court transferred the case to the undersigned, but both parties did not consent to proceed before a magistrate judge.  The undersigned therefore now enters this Report and Recommendation.

I.    **Facts**

Moore has a ninth grade education and previously worked as a home health and nurse's aide. (Tr. 44, 56.)  She claims she became disabled in September 2010, a month during which she was treated at an emergency room for right-sided numbness and weakness, radiating pain in her right arm, and altered speech.  (Tr. 14, 45, 235.)  Physicians diagnosed cerebrovascular accident and discharged Moore in stable condition.  (Tr. 14, 237, 259.)

Approximately one month later Moore was treated in the same emergency room for a transient ischemic attack (TIA) with symptoms that included right-sided weaknesses, altered coordination, and difficulty speaking.[1]  (Tr. 14, 283, 288.)  Her family reported that Moore, who is

---

[1]A TIA is an acute neurologic deficit resulting from circulatory impairment that resolves within 24 hours. *Stedman's Medical Dictionary* 1849 (28th ed. 2006).

right-handed, had experienced right-sided weakness, weak right grip, and problems with speech since her treatment at the emergency room the prior month. (Tr. 283, 291.) On December 30, 2010, Moore was seen again at the emergency room for similar symptoms—right-sided weakness and difficulty speaking. (Tr. 357.) One month later she was again treated for a TIA with symptoms of "severe speech problem," altered mental status, and right-sided weakness. (Tr. 333, 338, 374.) According to treatment notes, Moore's husband reported that she was awake in the morning when he left for work, but when Moore's daughter checked on her one hour later, she was slow to answer the door and was unable to speak. (Tr. 333.) Moore was discharged with improvement in both speech and weakness with recommendations that she use a walker for ambulation. (Tr. 338–39.)

The records show that Moore was thereafter treated in the emergency room for similar symptoms on a number of occasions between May 2011 and April 2012. (Tr. 426, 549, 558, 572, 583, 613.) Records from these visits indicate that Moore experienced ongoing but intermittent problems with her ability to speak and with right-sided weakness. (Tr. 558, 571–72, 613.) Testimony from Moore and one of Moore's friends at a hearing before an administrative law judge (ALJ) shows that Moore experienced problems speaking and right-sided weakness, as well as drooping of her right shoulder. (Tr. 48, 51, 53.) Moore's friend testified that Moore had experienced ongoing weakness in her right side for a number of years. (Tr. 53.)

The ALJ determined that Moore was capable of performing light work "except she stutters in her speech, she cannot perform constant handling, and she uses a cane to ambulate." (Tr. 13.) He concluded, based on testimony from a vocational expert, that Moore could perform the jobs of hand packager, bench assembler, and machine tender. (Tr. 17.)

Moore brings a number of arguments in support of this appeal.  She argues that the ALJ: failed to properly assess her depression; erred in finding that her impairments did not meet a listing in the regulations; and erred in assessing her residual functional capacity.  Moore's final argument has merit.

## II.   <u>Discussion</u>

The standard the Commissioner uses to review an application for Social Security benefits involves a five-step sequential evaluation.  20 C.F.R. § 404.1520 (2014).  Under the sequential evaluation, the ALJ decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listing in the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work.  *Id.*

At steps four and five of the sequential disability evaluation, the ALJ must determine the claimant's residual functional capacity.  20 C.F.R. § 404.1520(a)(4)(iv).  The term "residual functional capacity" is used to indicate the most a claimant can do despite his impairments. § 404.1545(a)(1).  In determining residual functional capacity, the ALJ considers all of the relevant medical and other evidence, including medical opinions, to determine the individual's ability to meet the physical demands, mental demands, sensory requirements, and other requirements of work. § 404.1545(a)(3),(4).

In this case, the ALJ determined that Moore could perform limited light work.  (Tr. 13.) Light work involves lifting twenty pounds at a time, frequently lifting or carrying objects weighing up to ten pounds, and either (1) a "good deal of walking" or standing or (2) sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 404.1567(b).  The only

limitations the ALJ included in his determination that would accommodate Moore's right-sided weakness was a limitation of no constant handling.  (Tr. 13.)

Substantial evidence does not support this determination.  The right-sided weakness Moore experiences is well-documented in the record; however, none of the physicians who examined Moore offered an opinion regarding the effect that her right-sided weakness would have on her ability to meet the strength demands of light work, particularly the ability to lift and carry objects. The ALJ's residual functional capacity determination was, therefore, not based upon a medical source opinion.  The Court of Appeals for the Fifth Circuit, in accord with the Commissioner's regulations, recognizes that an ALJ should generally request a medical source statement describing the types of work the claimant can perform despite his impairments.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995); 20 C.F.R. § 404.1513(b)(6).  Although the lack of such a statement does not make the record incomplete as long as the existing record provides substantial evidence to support the ALJ's determination*, in this case, as in *Ripley*, there is raw medical data showing that the claimant suffers from impairments that affect her ability to work.  *See Ripley*, 67 F.3d at 557. However, as in *Ripley*, there is no medical source statement describing the effect Moore's impairments might have on her ability to work.  *See id.* ("The record includes a vast amount of medical evidence establishing that Ripley has a problem with his back.  What the record does not clearly establish is the effect Ripley's condition had on his ability to work.")

Because the record lacks medical source evidence regarding the effect that Moore's right-sided weakness would have on her ability to perform the strength requirements of light work and because the remainder of the evidence does not provide substantial support for the ALJ's residual functional capacity finding, remand is required.

4

On remand, the ALJ should obtain a medical source statement regarding the impact that Moore's impairments would have on her ability to work.  In addition, given the intermittent symptoms associated with Moore's TIAs, the medical opinion should include information regarding Moore's ability to maintain employment.  "[A] determination that a person is capable of engaging in substantial gainful activity depends on a finding not only that the individual has some chance of being hired, but also, that, taking account of the individual's exertional and non-exertional limitations, the individual has a reasonable chance 'once hired, of keeping the job.'" *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002) (quoting *Wingo v. Bowen*, 852 F.2d 827 (5th Cir. 1988)).  In situations in which the claimant has either a non-exertional impairment or an exertional impairment that waxes and wanes in its manifestation of disabling symptoms, it must be determined whether the claimant's symptoms are such that they would preclude him from maintaining work. *Id.* at 217; *Singletary v. Bowen,* 798 F.2d 818, 822 (5th Cir. 1986).

The court is charged with determining whether the Commissioner's denial of Social Security benefits is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence.  *Watson*, 288 F.3d at 215 (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).  The court must therefore set aside findings which are not supported by substantial evidence and must correct errors of law.  *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted).  Because substantial evidence does not support the ALJ's decision, the district court should reverse the Commissioner's decision and remand Moore's case for further administrative proceedings.

### III.   **Recommendation**

The undersigned recommends that the district court reverse the Commissioner's decision and remand Moore's case for further administrative proceedings.

### IV.   **Right to Object**

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2014); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:      June 2, 2014.

NANCY M. KOENIG
United States Magistrate Judge

6